## Grant v. McArthur's Executors.

(Decided April 23, 1913.)

### Appeal from Powell Circuit Court.

1. Partnership—Action to Settle and Recover Interest in Lands—Finding of Chancellor—Evidence.—In an action by one partner against another to settle a partnership and recover an interest in the proceeds of certain lands, evidence examined, and held to sustain a finding of the chancellor denying him the relief prayed for.

2. Land—Warranty—Action on.—The purchaser of lands under an executed conveyance cannot recover on a covenant of warranty until there has been an eviction.

3. Vendor and Purchaser—Contract to Convey Good Title—Liability of Vendor.—Where a vendor contracts to convey land by good and sufficient title, he is liable in damages for his failure to do so.

4. Partnership—Agency—Authority of Partners.—Where a partnership is formed for the purpose of buying and selling lands, either partner, as agent of the firm, has authority to sell the lands and employ agents and attorneys for the purpose of perfecting title, and to make a reasonable compromise in the interests of the partnership.

5. Partnership—Duties of Members.—In attending to the partnership business, each partner is required to exercise good faith and that care which an ordinarily prudent business man would exercise under like or similar circumstances, and where he acts in good faith and with such care, he does not become individually liable to the other partners of the firm.

GOURLEY & GOURLEY and T. J. BIGSTAFF for appellant.

CHAS. D. GRUBBS, ROBT. H. WINN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On August 31, 1903, appellant, John Grant, purchased from Mrs. Emma G. McGowan, a tract of 2,685 acres of timber land located in Powell and Menifee Counties. The consideration, which was $33,562.55, was furnished by one Peter McArthur, of Detroit, and the deed made to him. On October 8, 1903, McArthur conveyed a one-half undivided interest in the land to John T. Ross, of Quebec, and on April 3, 1908, McArthur conveyed the other half to James J. MacLennan and Evan A. Begg, of Toronto.

Alleging that he and McArthur bought this land for the joint account, under a written agreement by which they should sell the land and divide the proceeds equally, after deducting the purchase price and costs and expenses connected with the purchase and sale of the land and timber, the appellant, John Grant, brought this action against McArthur, MacLennan and Begg to recover his interest in the land which he alleged to be of the value of $15,000. Besides other defenses, which it is not necessary to notice, McArthur, MacLennan and Begg pleaded that the land in question was sold for $60,-000, and that the purchase price and interest and other costs and expenses incident to the sale amounted to $63,-647.44, or $3,647.44 in excess of the sale price. In the answer they set up the various items aggregating the sum of $63,647.44. On final hearing the chancellor was of the opinion that as the purchase price, with interest and other expenses and costs incident to the sale of the land exceeded the sale price, there was nothing coming to Grant, and gave judgment accordingly.

We have carefully gone over the various items of expense incident to the purchase and sale of the tract of land in controversy, and find no reason to disturb the finding of the chancellor. Indeed, it is not seriously contended that the various items going to make up the purchase price, interest and other costs and expenses are erroneous.

The principal contention on this appeal relates to the propriety of certain expenditures incurred by appellee for the purpose of perfecting their title to the land in controversy and for what is claimed was an unnecessary abatement of the purchase price at which the lands were finally sold. A consideration of these questions necessitates a brief review of the facts.

On April 30, 1909, and by a subsequent agreement dated May 19, 1909, appellees sold the land in controversy to Messrs. Flynn & Simmons, and obligated themselves to convey to the purchasers the fee simple title by April, 1910. The purchase price was fixed at $65,000. The title to the land in question descended from John T. McGowan and others, the children and devisees of James P. McGowan. Messrs. Flynn & Simmons employed C. B. Wheeler to examine the title. After examining the title, Wheeler gave it as his opinion that the McGowan vendors, under the will of James P. McGowan, acquired only

a life estate. Thereupon, Messrs. Flynn & Simmons, upon the advice of Mr. Wheeler, declined to accept title from appellees. Clause 11 of the will of James P. Mc-Gowan is in the record, and a reading of its provisions confirms the view taken by Mr. Wheeler. Finding themselves with only a life interest in land which they had sold at $65,000, with an outstanding obligation to convey to the purchasers a good and sufficient title, appellees purchased the remainder interests of James P. Mc-Gowan's grandchildren. The cost of these remainder interests, including attorneys' fees and other expenses incident thereto, amounted to about $8,000. The remainder interests were not acquired until about four months after appellees had contracted to perfect the title in Flynn & Simmons Flynn & Simmons set up a claim for damages in the sum of $15,000, based on the idleness of their machinery and force of men during the delay. After a good deal of discussion and contention over the matter, the claim for damages was finally compromised by Flynn & Simmons agreeing to pay $60,000 for the lands, instead of $65,000, the original contract price, which was considered a high price for the land. It is the contention of appellant that the $8,000 expended in obtaining the remainder interests, and the 5,000 abated from the contract price of the lands should not be charged to the partnership, because this outlay of expense was not only unnecessarily made, but was made without the knowledge or consent of appellant. In this connection it is insisted that appellees had a deed from Mrs. McGowan with a covenant of general warranty, and that Mrs. McGowan was amply able to protect her warranty. It must be remembered, however, that the deed from Mrs. McGowan to McArthur had been executed several years. Appellees, therefore, were without recourse on the warranty of Mrs. McGowan until there had been an actual eviction. Huff v. Cumberland Valley Land Co., 17 Ky. L. Rep., 218; Jones v. Jones, 87 Ky., 82. On the other hand, they had not executed a deed to Messrs. Flynn & Simmons, but were under obligation to do so and to convey a good title by a certain time. If, therefore, they failed to do so by the time stipulated in the contract, they were liable in damages for such failure. Jenkins, et al. v. Hamilton, 153 Ky., 163. It is well settled that parties may enter into a partnership for the purchase and sale

of land. Bates v. Babcock, 95 Cal., 479, 29 Am. St. Rep., 133; Jones v. Davies, 60 Kan., 309, 72 Am. St. Rep., 344; Boreing v. Wilson, 128 Ky., 570; Garth v. Davis, Johnson & Co., 120 Ky., 106. Where the partnership is organized to buy and sell lands, either partner, as the agent of the partnership, may exercise that right, and there can be no doubt that it is within the power of such an agent to protect the partnership property and comply with the obligations of the firm, to employ agents and attorneys to clear up the title, and to effect a reasonable compromise in the interest of the partnership. Garth v. Davis, Johnson & Co., *supra;* S. Barker & Co. v. Mann, &c., 5 Bush, 672; and such partner will not become individually liable to the other members of the firm if, in doing these things, he acted in good faith and with that degree of care which an ordinarily prudent business man would exercise under the same or similar circumtsances. In this case it cannot be said that there was a failure in either of these respects. Even if appellees had not bound themselves to convey the fee simple title to Messrs. Flynn & Simmons, it would have been the part of prudent business men, when they found that they had only a life estate in property, worth in the neighborhood of $60,000, to protect their own title by purchasing the interests of outstanding claimants, and when, in addition to this, they were under an obligation to convey the property by good and sufficient title, they were certainly justified not only in incurring the additional expense rendered necessary to perfect their title, but to compromise Flynn & Simmons' claim for damages by a reasonable abatement of the purchase price.

As, under appellant's contract, he was entitled only to share equally in the proceeds of the land after the purchase price and other costs and expenses, with interest, were paid, and as these items exceeded the price at which the land was sold, it follows that the judgment of the chancellor was proper.

Judgment affirmed.